NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| eTEAM, INC., | Civil Action No. 19-18380 (SDW) (LDW) |
| Plaintiff, | **OPINION** |
| v. | |
| VINTECH SOLUTIONS, INC., | July 25, 2022 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court are Cross-Motions for Summary Judgment brought by Plaintiff eTeam, Inc. ("Plaintiff") and Defendant Vintech Solutions, Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. The Motions are decided without oral argument pursuant to Rule 78. For the reasons discussed below, this Court **DENIES** both Motions.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of an alleged breach of contract relating to the employment of an IT consultant. Plaintiff is a New Jersey corporation that recruits and places IT consultants with clients. (D.E. 66 ¶ 1.)[1] In March 2018, Plaintiff entered into a Consulting Services Agreement ("CSA") with Defendant, a Missouri incorporated computer software company that also places IT

---

[1] Record citations in this opinion are generally to Plaintiff's Statement of Undisputed Material Facts (D.E. 59), Defendant's Statement of Undisputed Material Facts (D.E. 66), Plaintiff's Responsive Statement and Supplemental Statement of Disputed Material Facts (D.E. 74-1), and Defendant's Responsive Statement and Supplemental Statement of Undisputed Material Facts (D.E. 65), as well as the record citations contained therein.

1

consultants. (D.E. 65 ¶ 3; D.E. 66 ¶ 8.) Under the CSA, Defendant provided the services of its consultants to Plaintiff. (D.E. 55-5, Ex. E to McGuire Decl. at 1; D.E. 74-1 ¶ 9.) The parties then entered a purchase order wherein Defendant would provide the services of one of its consultants, Sunil Ravulapalli ("Ravulapalli") to Plaintiff's clients. (*See generally* D.E. 55-6, Ex. F to McGuire Decl.) Plaintiff then placed Ravulapalli on a consulting project with its clients Infosys, Ltd ("Infosys") and Pontoon Solutions Inc. ("Pontoon"),[2] who in turn placed Ravulapalli on assignment with the end-client, Northwestern Mutual Life Insurance, Co. ("Northwestern"). Per the CSA, the parties agreed that Ravulapalli was not an employee of Plaintiff or Plaintiff's clients. (D.E. 55-5, Ex. E to McGuire Decl. at 4.) The CSA also contained an indemnification provision stating that Defendant would indemnify Plaintiff for any "claims brought or liabilities imposed against [Plaintiff] or its client by [Defendant]'s Consultant(s)" arising from any "matters involving the acts or omissions of [Defendant] and its employees." (*Id.*)

While at Northwestern, Ravulapalli had access to Northwestern's confidential and proprietary information. (D.E. 55-8 ¶ 2, Ex. H to McGuire Decl.) During this time, he disseminated confidential and proprietary information to unauthorized third parties before being removed in July 2018. (*Id.* ¶ 3; D.E. 59 ¶ 14.) After investigating the matter, Northwestern reached a settlement with Infosys in January 2019, whereby Infosys paid Northwestern $1.3 million to resolve all claims related to the alleged misconduct of eleven Infosys-placed consultants, including Ravulapalli. (D.E. 74 ¶ 18.)

On August 14, 2019, Infosys demanded reimbursement from Plaintiff for $160,000, reflecting Infosys' assessment of damages attributable to Ravulapalli. (D.E. 55-9, Ex. K to McGuire Decl.) After a series of emails were bounced back, Plaintiff notified Defendant of

---

[2] Pontoon is Infosys' vendor management services provider. (D.E. 74-1 ¶ 9.) Infosys is the successor-in-interest to Pontoon. (*Id.*) Pontoon, Infosys, and Northwestern and not parties to this action.

Infosys' demand for indemnification on August 17, 2019.  (D.E. 66 ¶ 28.)  Over the next few weeks, Defendant sought information regarding the indemnification demand, including the model used to determine and allocate damages.  (*Id.* ¶¶ 31–34.)  Plaintiff and Infosys ultimately agreed to a settlement of $120,000 on September 12, 2019, without further input or approval from Defendant.  (D.E. 74-1 ¶ 35.)  Plaintiff subsequently demanded Defendant reimburse Plaintiff for the amount paid to Infosys, which Defendant has thus far refused.  (D.E. 74-1 ¶ 35.)

Plaintiff commenced this lawsuit on September 26, 2019 and filed its Amended Complaint on February 12, 2020.  (D.E. 1, 10.)  The Amended Complaint alleges three counts: Breach of Contract (Count II), Contractual and Common Law Indemnification (Count III), and Declaratory Judgment for Contractual and Common Law Indemnification (Count III).  (D.E. 10 ¶¶ 26–44.)  On April 24, 2020, Defendant filed a motion to dismiss, arguing Plaintiff's claims of breach of contract and common law indemnification were barred because Plaintiff was not a licensed employment agency under N.J.S.A. 34:8-43 *et seq.* ("Private Employment Agency Act" or "the Act").  (D.E. 13-1 at 17.)  This Court denied Defendant's motion, finding that "a determination of whether Plaintiff is an 'employment agency' within the meaning of Act requires some discovery and a full factual record." *eTeam, Inc. v. Vintech Sols., Inc.*, No. 19-18380, 2020 WL 7183505, at *4 (D.N.J. July 31, 2020).  Following discovery, the parties filed their motions for summary judgment and briefing was timely completed.  (D.E. 60, 67, 84, 86.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citation omitted).

### III.    DISCUSSION

#### A.    Employment Agency

The Private Employment Agency Act provides that an employment agency cannot "maintain an action . . . for the collection of a fee, charge or commission for the performance of any of the activities regulated by this act without alleging and proving licensure or registration, as appropriate, at the time the alleged cause of action arose." N.J.S.A. 34:8-45(b). This bar includes actions to enforce "a contract entered into in violation of [the] licensing statute." *Accountemps Div. of Robert Half of Phila., Inc. v. Birch Tree Grp., Ltd.*, 560 A.2d 663, 669 (N.J. 1989). It also applies to "any claim for compensation," such as Plaintiff's indemnity claim, "whether couched as fees in contract or damages in tort." *Data Informatics, Inc. v. AmeriSource Partners*, 768 A.2d 210, 220–21 (N.J. Super. Ct. App. Div. 2001); *see also Insight Global, LLC v. Collabera, Inc.*, 143 A.3d 880, 887 (N.J. Super. Ct. Law Div. 2015) (holding the Act "not only bar[s] claims for a collection of fees" but also all plaintiff's claims that "relate to the operation of its employment agency services"). Thus, as a threshold matter, the Court first examines whether Plaintiff was an unlicensed employment agency such that it is statutorily barred by the Act from bring suit.

The Act defines an employment agency, in pertinent part, as:

> [A]ny person who, for a fee, charge or commission:
>
> (1) Procures or obtains, or offers, promises or attempts to procure, obtain, or assist in procuring or obtaining employment for a job seeker or employees for an employer; or (2) Supplies job seekers to employers seeking employees on a part-time or temporary assignment basis . . . or (4) Acts as a placement firm, career counseling service, or resume service . . . .

N.J.S.A. 34:8-43. In *Data Informatics*, a company similarly brought a tort and contract action against a placement agency, seeking damages resulting from the placement of an employee with the company's client. 768 A.2d at 211. The court, viewing the totality of the plaintiff's conduct, held that the plaintiff functioned as an employment agency because it procured an employee from the defendant, placed her with a client/employer, and was compensated based on a percentage of the employee's wages. *Data Informatics*, 768 A.2d at 218 (affirming defendant's summary judgment motion because plaintiff was barred by the Act from suit). Here, Plaintiff procured Ravulapalli, placed him with Infosys, and was compensated based on Ravulapalli's hourly billed rate. (D.E. 74 ¶ 5.)

On the other hand, genuine issues exist as to who was Ravulapalli's employer. An "employer has the power or right to control and direct the employee in the material details of how the work is to be performed." *Data Informatics*, 768 A.2d at 218. Plaintiff concedes Infosys and/or Northwestern managed Ravulapalli on a day-to-day basis, although scant evidence is given as to Plaintiff's day-to-day activities. (D.E. 74 ¶ 4.) Moreover, the CSA expressly provides that Ravulapalli is *not* an employee of Plaintiff or its clients. (D.E. 55, Ex. E to McGuire Decl. at 4.) Infosys' principal legal counsel attested Ravulapalli was a "subcontractor[] employed by [Defendant]." (D.E. 53-1 ¶ 7.) Ravulapalli described himself as "an independent contractor of Infosys working at [Northwestern]." (D.E. 53-2, Ex. A to Quinn Decl. at 1.) In finding there are

6

material issues to be resolved as to who was Ravulapalli's employer, and thus whether Plaintiff was an employment agency, the Court therefore denies Defendant's Motion.

### B. Settlement Indemnification

In New Jersey, a party may not be indemnified for settlement payments unless: "(a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; (b) the indemnitee faced potential liability for the claims underlying the settlement; and (c) the settlement amount was reasonable." *Serpa v. N.J. Transit*, 951 A.2d 208, 213 (N.J. Super. Ct. App. Div. 2008) (citations omitted). Here, as the only dispute is whether the settlement between Plaintiff and Infosys was reasonable, the Court focuses its inquiry on the third *Serpa* prong.

An insured wrongfully denied coverage for an indemnification settlement is entitled to compensation from the insurer so long as the settlement was "reasonable" and "made in good faith." *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 528 (D.N.J. 2011). The Court notes the similarities between this case and *eTeam, Inc. v. SVS Tech., Ltd.*—a companion case wherein Plaintiff similarly settled with Infosys for the acts of a different IT consultant. No. 19-18600, 2021 WL 2472332, at *1 (D.N.J. June 16, 2021). There, this Court granted Plaintiff's motion for summary judgment upon a finding that Plaintiff's settlement negotiations were conducted reasonably and in good faith. Here, however, unlike *SVS*, genuine issues of fact exist as to whether Plaintiff negotiated reasonably and in good faith.

Factors courts may consider in determining the reasonableness of a settlement include whether: (1) there was risk of a larger obligation if litigated; (2) there was an extended period of negotiation; (3) there was a considerable discrepancy between the initial demand and the ultimate settlement; and (4) the indemnitor voiced objections to the amount of the agreement. *Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*, 88 F. Supp. 2d 360, 369–70 (D.N.J. 2000). Here, negotiations

began on April 16, 2019 and concluded with the September 12, 2019 settlement.  (D.E. 55-8, Ex. I to McGuire Decl.; D.E. 59 ¶ 39.)  Yet Plaintiff did not provide Defendant notice of Infosys' indemnification demand until August 17, 2019, less than a month before settlement.  (D.E. 67 at 19.)  Furthermore, unlike the defendant in *SVS*, Defendant immediately engaged counsel upon receipt of the August 17 email, who then raised numerous inquiries and concerns as to the amount of the underlying damages in the weeks following Plaintiff's initial demand.  (D.E. 74 ¶ 30–35.)  After rejecting Defendant's request for a preliminary call with Defendant's counsel to discuss the settlement, Plaintiff then settled with Infosys "without further input from Defendant or Defendant's approval."  (*Id.* ¶ 34–35.)

Whether there was a risk of a larger obligation is a difficult inquiry to resolve—one best left for a jury—especially considering how little information is available as to the legitimacy of Infosys' damages calculation.  It may be that the settlement amount was reasonable given that Ravulapalli shared Northwestern's confidential intellectual property with four people.  (D.E. 53-3, Ex. B to Quinn Decl. at 1.)  Of the four, two were complete strangers and one was an employee of Northwestern's direct competitor.  (*Id.*)  Nonetheless, "reasonableness and good faith require that the insured expend efforts to determine whether the claims are valid and whether the amount proposed is reflective of the injuries claimed."  *Hartford Cas. Ins. Co. v. Peerless Ins. Co.*, No. 10-6235, 2019 WL 4746339, at *25 (D.N.J. Sept. 30, 2019) (quotation omitted).

In *SVS*, this Court found that the defendant did not "provide any evidence that Northwestern's 'invoices' or 'legal fees' were, in fact, unhinged from the Settlement total."  2021 WL 2472332, at *4.  For example, inter alia, the defendant did "not cite to deposition testimony regarding the costs or scope of the investigation . . . ."  *Id.*  Conversely, here, Defendant cites to depositions from Plaintiff's principal and counsel revealing that Plaintiff settled without inquiring

8

as to how Northwestern calculated the total damages or the portion attributable to Ravulapalli. (D.E. 67 at 8–13.)  Thus, at the very least, a reasonable jury could find Plaintiff did not exercise adequate due diligence in determining whether Northwestern's claims were reflective of the damages claimed.  Accordingly, Plaintiff's Motion for Summary Judgment is denied.

### C. Defendant's Outstanding Invoices

Finally, the Court examines whether Defendant should be awarded summary judgment on its counterclaim for its unpaid invoices.  To plead a claim for unjust enrichment, a plaintiff must show "that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *David v. Volkswagen Grp. Of Am., Inc.*, No. 17–11301, 2018 WL 1960447, at *6 (D.N.J. Apr. 26, 2018) (citation omitted).

Here, Plaintiff was paid in full by Infosys for the services "provided by Ravulapalli" while withholding payments to Defendant for its May, June, and July 2018 invoices, totaling $29,232. (D.E. 74-1 ¶ 36–37.)  While Plaintiff may have been paid, genuine issues of material fact remain as to whether Ravulapalli ever did the work to justify any payment.  Ravulapalli admitted to having another individual impersonate him to pass a technical interview with Northwestern, and for disseminating confidential information "for the purposes of helping [him] perform [his] work at Northwestern."  (D.E. 53-2 ¶ 8; D.E. 53-3 at 1.)  However, the extent to which he needed and/or received help, compared with how much work he performed himself, remains unclear.  Plaintiff avers that "[a]ll services were provided by [Ravulapalli's] non-[Defendant] associates and all such services were the cause of damage . . . ."  (D.E. 74 ¶ 37.)  It may be that a jury will agree, but more information is needed to make this determination.  Defendant's motion as to its outstanding invoices is therefore denied.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED,** and Defendant's Cross-Motion for Summary Judgment is likewise **DENIED**. An appropriate order follows.

s/ <i>Susan D. Wigenton</i><br>
**SUSAN D. WIGENTON**<br>
UNITED STATES DISTRICT JUDGE

Orig:     Clerk
cc:       Hon. Leda D. Wettre, U.S.M.J.
          Parties